UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   **CV 06-1091-JFW (FMOx)**                                   Date: February 14, 2007

Title:   United States America -v- Morteza Eghbal, et al.

---

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                                      None Present
   Courtroom Deputy                                    Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
           None                                                None

**PROCEEDINGS (IN CHAMBERS):**   **ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT [filed 12/11/06; Docket No. 57]; AND VACATING PRE-TRIAL CONFERENCE AND TRIAL DATES**

   On December 11, 2006, Plaintiff United States of America ("Plaintiff" or the "Government") filed a Motion for Summary Judgment ("Motion"). On December 26, 2006, Defendants Morteza Eghbal and Marilyn Trujillo (collectively "Defendants") filed their Opposition. On January 3, 2007, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's January 8, 2007 hearing calendar and the parties were given advance telephonic notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   FACTUAL SUMMARY**

   Defendant Morteza Eghbal ("Eghbal") is a real estate investor who has sold over 200 properties to borrowers who received mortgage loans that were insured by the United States Department of Housing & Urban Development ("HUD"). United States Proposed Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 5. During the time period relevant to this action, the Secretary of HUD was authorized pursuant to Sections 203(b) and 234(c) of the National Housing Act, 12 U.S.C. §§ 1709(b) and 1715y(c), to insure lenders against loss on mortgage loans made to buyers of single-family housing, including condominium units. Exhibits A-G in Support of United States' Motion ("Plaintiff's Exh.") E, Affidavit of Travis Pham ("Pham Decl.") ¶ 2. A loan is not eligible for HUD insurance unless the buyer contributes the minimum down payment from his or her own funds, or from another authorized source, such as a gift from the

buyer's relative or from the buyer's employer. *Id.* at ¶ 4. The seller or any person with an interest in the sale of the property is expressly prohibited from providing the down payment to the buyer. *Id.* To ensure that sellers do not provide the down payment to recipients of HUD-insured home mortgage loans, HUD requires sellers to sign an Addendum to the HUD-1 Settlement Statements ("HUD-1 Addendum") that includes the following certification: "I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash downpayment [sic]." *Id.*; *see also* Plaintiff's Exh. D, Affidavit of James Hagen ("Hagen Decl.") ¶ 11. HUD will not insure a loan if the down payment was paid by the seller, and the HUD-1 Addendum was not signed. SUF ¶¶ 1-2; *see also* Plaintiff's Exh. E, Pham Decl. ¶¶ 1, 6.[1]

If the borrower defaults on a HUD-insured loan and the lender forecloses, the lender may submit a claim to HUD for the balance due on the loan, including interest and other costs. Plaintiff's Exh. F, Affidavit of Mark F. Rinde-Thorsen ("Rinde-Thorsen Decl.") ¶ 2. Generally, after HUD pays the lender's claim, it takes title and possession of the real property. *Id.* After HUD acquires the property, HUD then generally pays the costs of real estate taxes, maintenance, and other costs related to holding and re-selling the property. *Id.*

From 1996 through 1999, Eghbal and his wife, Defendant Marilyn Trujillo ("Trujillo"), sold 27 properties to recipients of HUD-insured home mortgage loans for which Eghbal and/or Trujillo paid or caused to be paid, the cash down payments. SUF ¶¶ 16-18; *see also* Plaintiff's Exh. E, Pham Decl. ¶ 3.[2] In connection with the sale of these 27 properties, Eghbal and/or Trujillo signed and submitted to the lender a HUD-1 Addendum for each property. SUF ¶¶ 46-72. Each lender included the HUD-1 Addendum for each property in the "Case Binder" that the lender sent to HUD.[3] Plaintiff's Exh. D, Hagen Decl. ¶¶ 24-25 and exhibits attached thereto at pgs. D11-D109.

The representations Eghbal and Trujillo made on the HUD-1 Addendum were false, because they had in fact paid, or caused to be paid, the cash down payments for each of the 27 HUD-insured home mortgage loans. SUF ¶¶ 8-10, 12-14. In May, 2003, Eghbal and Trujillo pled guilty to, and were convicted of, violations of 18 U.S.C. § 371 (conspiracy to defraud the United States) and 18 U.S.C. § 1001(a)(2) (making false statement in a matter within the jurisdiction of

---

[1] Apparently several of the properties at issue here were insured by the "FHA." Defendants contend that the FHA is "the Federal Housing Association ("FHA")" which Defendants explain is "a division of HUD and provides mortgage insurance to approved commercial lending institutions." Opposition 4:1-3. Plaintiff contends the FHA is the "Federal Housing Administration . . . which was a precursor to HUD." Plaintiff's Exh. E, Pham Decl. ¶ 1. There is no dispute that the loans at issue here were insured by the Government, thus, the name of the insurer is not particularly important. For ease of reference, the Court refers to "HUD" as the insurer of the loans.

[2] There is no dispute as to the number or location of the properties at issue here, nor is there a dispute as to the manner in which Eghbal and/or Trujillo paid, or caused to be paid, the cash down payments. *See* SUF ¶¶ 16-45. Accordingly, the details of these transactions will not be recited here.

[3] HUD requires lenders to create and submit to a regional HUD Ownership Center a "Case Binder" for every loan that HUD insures under the National Housing Act. Plaintiff's Exh. D, Affidavit of James Hoogoian ¶ 10.

the government) in connection with their submission of false and fraudulent HUD-1 Addendum. SUF ¶¶ 6, 11; Plaintiff's Exh. A, B.[4] In their plea agreements, Eghbal and Trujillo admitted that, in connection with the sale of 62 properties, they had defrauded HUD by paying the down payments for borrowers of HUD-insured loans, that they had paid the down payments by causing cashiers' checks to be deposited into escrow at closing, and that they falsely certified on the HUD-1 Addendum that they had not provided the down payments. SUF ¶¶ 7-10, 12-15.

After the borrowers of the 27 HUD-insured home mortgage loans at issue here defaulted, the lenders foreclosed and submitted claims for payment to HUD. SUF ¶¶ 75-102; Plaintiff's Exh. G, Affidavit of Sarah Pierce Martin ("Martin Decl.") ¶ 3 and exhibits attached thereto at pgs. G4-G-139. As a result of the 27 defaulted loans, HUD paid claims totaling $2,808,050.93–consisting of $2,604,180.53 in insurance claims paid to the lenders, tax liabilities of $1,189.36, maintenance costs of $102,395.24 and $100,285.80 in costs incurred in connection with the re-sale of the 27 properties. SUF ¶ 102-105; see also Plaintiff's Exh F, Rinde-Thorsen Decl. ¶ 8 and exhibits attached thereto at pgs. F5-F34. HUD recovered $2,121,070 by re-selling the 27 properties. SUF ¶ 107; see also Plaintiff's Exh F, Rinde-Thorsen Decl. ¶ 8. Eghbal paid restitution in the amount of $499,387. SUF ¶ 108; Plaintiff's Exh. D, Hagen Decl. ¶ 39. Additionally, HUD received $101,031.41 in indemnification payments from the lenders. SUF ¶ 109; Plaintiff's Exh. G, Martin Decl. ¶ 4.

Plaintiff seeks $5,702,644.38 in damages plus a civil penalty of between $148,500 and $279,000. The FCA authorizes the Government to collect treble damages. 31 U.S.C. § 3729(a); see also Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 411 (2005). Treble damages are calculated based on the loss the Government sustained prior to applying credit for the sums recovered through restitution and foreclosure. See United States v. Bornstein, 423 U.S. 303, 316 (1976). The Government's damage calculation is based on the trebling of the claims it paid ($2,808,050.93 x 3 = $8,424,152.79) less the following: $2,121,070, the amount recovered by the Government through re-sale of the 27 properties, Eghbal's restitution payments of $499,387, and indemnification payments of $101,031.41 received from the lenders, for a total damages of $5,702,664.38, before any award of civil penalties.[5]

---

[4] Trujillo also plead guilty and was convicted of violating 18 U.S.C. § 2(b) (aiding and abetting). SUF 11; Plaintiff's Exh. B.

[5] Plaintiff seeks a civil penalty of between $5,500 and $11,000 for each of the 27 claims paid by the Government. 31 U.S.C. § 3729(a); see also Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. at 411. Thus, Plaintiff seeks total civil penalties of between $148,500 and $279,000. Defendants argue that if any civil penalty is awarded, the minimum civil penalty of $5,000 per claim or a total of $135,000 (27 x $5,000) is just. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, the minimum civil penalty was adjusted from $5,000 to $5,500 for violations occurring on or after September 29, 1999.

## II. LEGAL STANDARD

### A. Motions for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." American International Group, Inc. v. American International Bank, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. "This requires evidence, not speculation." Meade v. Cedarapids, Inc., 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. See Hanon v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. See Anderson, 477 U.S. at 249-50; TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." American International Group, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

### B. Liability Under The False Claims Act

Under the False Claims Act ("FCA") civil liability may be imposed upon "any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," or any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. §§ 3729(a)(1) and (a)(2). A person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid" is also liable under the FAC. 31 U.S.C. § 3729(a)(3). Under the FCA a "'claim' includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of

the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

"[A]ny person who knowingly assisted in causing the government to pay claims which are grounded in fraud, without regard to whether that person has direct contractual relations with the government" may be liable for violation of the FCA. *U. S. ex rel. Marcus v. Hess*, 317 U.S. 537, 544-545 (1943). "The essential elements of FCA liability [are]: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). The Government need not prove actual damages to prevail under § 3729(a)(1) or § 3729(a)(2) of the FCA. *See United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (citing *Rex Trailer Co. v. United States*, 350 U.S. 148, 153, n. 5 (1956)).

## III. DISCUSSION

### A. There are No Genuine Issues of Material Fact Regarding Defendants' Liability for Violation of the FCA

Plaintiff contends that as a result of Defendants' convictions for violations of 18 U.S.C. § 371 and 18 U.S.C. § 1001(a)(2), and their admissions in their respective plea agreements, there are no disputed issues of fact with respect to any of the elements required to establish FCA liability, and that Defendants are estopped from claiming otherwise pursuant to 31 U.S.C. § 3731(d).[6] Defendants admit that they knowingly made false statements, and that their false statements were material to HUD's decision to insure the 27 home mortgage loans. However, Defendants dispute that their false statements caused the Government "to pay out money."[7]

---

[6] 31 U.S.C. § 3731(d) provides in pertinent party, "a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements . . . upon a plea of guilty . . . , shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730."

[7] Defendants also argue that to establish FCA liability the Government must demonstrate that it "relied on [their] false statements in issuing the loans here." Opposition 11:24-25. Reliance is not an element necessary to establish FCA liability. *See e.g. United States ex rel. Hendow v. University of Phoenix*, 461 F.3d at 1174. Nevertheless, even if reliance were required, Defendants have admitted that the Government would not have insured the 27 home mortgage loans if it knew they had paid, or caused to be paid, the down payments or if the HUD-1 Addendum, containing their false statements, had not been signed. Additionally, the uncontroverted evidence establishes that HUD will not issue mortgage insurance without receiving the HUD-1 Addendum. Exhibit H in support of Plaintiff's Motion ("Exh. H"), Deposition of Travis Pham 67:12-13; 68:5-19. Thus, while the Government is not required to establish reliance, even if it were, the uncontroverted evidence demonstrates that the Government relied on the HUD-1 Addendum, which included Defendants' false statements, in deciding to insure the 27 loans.

Defendants argue that simply because their false statements caused Plaintiff to insure the 27 loans, does not also mean that "[D]efendants false statements caused the submission of false claims to be made on the [G]overnment." Opposition 14:23-24.[8]

The FCA's causation requirement is satisfied if the defendant caused a claim to be submitted to the government, even if he or she did not personally submit the claim. *United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001) ["*Mackby I*"]; *see also United States v. Bornstein*, 423 U.S. at 309 (false claim may be presented through an innocent third party); *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) (approving theory of FCA liability set forth in *United States v. Ekelman & Assoc.*, 532 F.2d 545, 552 (6th Cir. 1976) "where, . . . after fraud was perpetrated on a lending institution for which the perpetrator of the fraud had secured government insurance, the lender presented its own claim to the government for payment . . . [t]he lender's claim . . . completes the perpetrator's violation of the FCA."). The FCA requires "a causal rather than a temporal connection between fraud and payment." *United States ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005).

"[A] demonstration that the government would not have guaranteed the loan 'but for' the false statement is sufficient to establish the causal relationship between the false claim and the government's damages necessary to permit recovery under the False Claims Act." *United States v. First National Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992); *see also United States ex rel. Hendow v. University of Phoenix*, 461 F.3d at 1170-1171 (noting the Congressional mandate that "the scope of false claims should be broadly construed" and that "each and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim."); *United States v. McLeod*, 721 F.2d 282, 283-284 (9th Cir. 1983) (holding that the government had established its FCA claim where its financial loss was caused by defendant's fraud because "but for" the defendant's conversion of government

---

[8] Defendants unconvincingly argue that there are genuine issue of fact regarding materiality which preclude summary judgment. Defendants admit that their false statements were material to HUD's decision to insure the 27 loans at issue, but they argue that just because their false statements "were material to [HUD's] decision to insure the loans at issue does not necessarily establish that . . . [Defendants] caused, a false or fraudulent claim to be paid by" the Government. Opposition 10:11-13; *see also* Opposition 11:9-11 ("although the false statements must be material to the [G]overnment's activities or decision, it need not have the effect of inducing the [G]overnment to part with money or property.") Plaintiff understandably argues at length that Defendants cannot contest the materiality of their false statements because they have admitted that their false statements were material and because the uncontroverted evidence establishes that Defendants' false statements were material. Defendants' argument unsuccessfully attempts to create a continuum of materiality so that while they admit that their false statements were material to HUD's initial decision to insure the loans, they deny that their false statements were material when HUD had to pay the lender's claims. Although creative, Defendants' argument fails. Once the false statements are determined to be material to a decision by the Government which results in the Government having to pay money, the FCA materiality requirements has been established. Notwithstanding Defendants failed attempt to create a "continuum of materiality," the real issue they raise is whether causation has been established.

funds, the government would not have been required to make a second payment to the proper recipient of the funds.); United States v. Veneziale, 268 F.2d 504, 505 (1959) (holding that a lender's claim for payment on a government loan guaranty is a false claim under the FCA, if the guaranty was induced by a false application).[9]

Moreover, where a defendant's false statements concern the buyer's financial qualifications for a HUD-insured home mortgage loan, the false statements are "more than a but-for cause" of any damages that the government sustains as a result of the borrower's default. United States v. Spicer, 57 F.3d 1152, 1159-1160 (D.C. Cir. 1995) (where it was undisputed that defendant intentionally misrepresented buyer's financial qualifications in order to induce HUD to approve mortgage loan and HUD suffered significant losses when buyer defaulted, defendant's misrepresentations were "more than a 'but-for' cause; they proximately caused HUD's losses"). In Spicer, the Court found that while it was "undoubtedly true that in each case other factors also 'caused' the buyer's default . . . as long as [defendant's] misrepresentations were a material and proximate cause, they need not have been the sole factor causing HUD's losses." Id. at 1159. See also United States v. Miller, 645 F.2d 473, 476 (5th Cir. 1981) (finding that although "[f]alse statements regarding residential property may not reasonably be a cause for subsequent defaults of mortgagors, as was the case in Hibbs . . ., false statements regarding the ability of purchasers to afford housing could very well be the major factor for subsequent defaults" and concluding that the government had "clearly alleged the necessary causation factor" to avoid dismissal of complaint).[10]

---

[9] In United States v. Veneziale, 268 F.2d at 505, a closely analogous case, the Third Circuit reversed a lower court decision dismissing an FCA claim based on a fraudulent application to the FHA for a loan guaranty, and held that fraudulent statements in a loan application that were an essential inducement to the government's guaranty and upon which the government had to pay, created a sufficient causal connection between the false statement and the government's having to pay money for purposes of establishing FCA liability. Id. The Court reasoned that "the wrong of the defendant was an important, even an essential factor in subjecting the government to an enforceable demand for money." Id. The Court concluded that "[a]lthough the wrongdoer neither sought nor obtained any transfer of government funds or property to himself, it has long since been settled that a fraudulently induced contract may create liability under the False Claims Act when that contract later results in payment thereunder by the government, whether to the wrongdoer or someone else." Id.

[10] Defendants sole reliance on United States v. Hibbs, 568 F.2d 347, 352 (3d Cir. 1977), to support their contention that their false statements did not cause the Government to pay money is misplaced. The Hibbs Court held that a defendant's false representations concerning the condition of residential properties subject to federally-insured mortgage loans did not cause the government's damages following the borrower's defaults because defendant's false statements about the condition of the properties did not bear "upon the likelihood of the applicants meeting mortgage payments, and thus the misrepresentation [did not have] a causal connection with the subsequent defaults." Id. Where, as here, the false statements at issue bear directly upon the likelihood that the buyers would be unable to make their mortgage payments, even the Hibbs Court would agree that the Defendants' "misrepresentations would have a causal connection [to] the subsequent defaults" sufficient to support FCA liability.

Defendants have admitted that HUD would not have insured the 27 loans if it knew that they had paid, or caused to be paid, the down payments, and it would not have insured the 27 loans if the HUD-1 Addendum, containing Defendants' false statements, had not been signed. Additionally, the uncontroverted evidence establishes that HUD would not have issued mortgage insurance without the HUD-1 Addendum. Accordingly, there is no dispute that "but for" Defendants' false statements HUD would not have insured the 27 home mortgage loans at issue and after the buyers' defaulted it would not have been obligated to pay the lender's claims. Therefore, the evidence establishes that Defendants' false statements caused the Government "to pay out money."

## B.   There are No Genuine Issues of Material Fact Regarding Plaintiff's Damages

Plaintiff seeks $5,702,644.38 in damages as authorized by the FCA, and a civil penalty of between $148,500 and $297,000. Defendants argue that the damages requested by Plaintiff are "unduly harsh and unreasonably excessive" (Opposition 16:9-10), "bear no rational relation to the offense conduct and so greatly exceed[ ] the actual loss sustained here that is [sic] can only be viewed as punitive in purpose." Opposition 17:17-19. Additionally, Defendants argue that only the minimum civil penalty is appropriate.

A fine is unconstitutionally excessive under the Eighth Amendment if "(a) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense." *Mackby I*, 261 F.3d at 829 (*citing United States v. Bajakajian*, 534 U.S. 321, 327-328 (1998)).[11] To determine whether a payment is "grossly disproportionate," courts consider (1) whether the violation was related to other illegal activities; (2) the other penalties that the Legislature has authorized; (3) the extent of the harm caused; and (4) the gravity of the offense versus the amount of the forfeiture. *United States v. 3814 NW Thurman St., Portland, OR.*, 164 F.3d 1191, 1197-1198 (9th Cir. 1999) ["*Thurman St.*"]; *see also United States v. Mackby*, 221 F.Supp.2d 1106, 1109 (N.D. Cal. 2002) [*Mackby II*] (same). Plaintiff has established that the damages award it seeks is not unconstitutionally excessive.

---

[11] Defendants half-heartedly argue that the Government's requested damages violate due process and equal protection because they amount to "a second punishment." *United States v. Halper*, 490 U.S. 435, 449 (1989). Under *Halper*, a court evaluating criminal and civil penalties imposed for the same violation was required to assess whether the civil penalty was "so disproportionate to the damages caused [as to] constitute[ ] a second punishment." *United States v. Halper*, 490 U.S. at 449-450. The Supreme Court rejected this approach in *Hudson v. United States*, 522 U.S. 93, 99 (1997) noting that "some of the ills at which *Halper* was directed are addressed by other constitutional provisions," including the Excessive Fines Clause, which "protects against excessive civil fines, including forfeitures." *Hudson v. United States*, 522 U.S. at 102-103. Whether the damages requested by Plaintiff violate the Excessive Fine Clause is addressed *infra*.

1. *Defendants Admitted to Engaging In Other, Related Illegal Activity*

In their plea agreements, Defendants admitted to participating in 62 fraudulent loan transactions involving HUD dating back to 1994 and continuing until at least September, 2001. SUF ¶¶ 10, 15; Plaintiff's Exh. A, B. These admissions establish that Defendants engaged in a broad, long-standing, sophisticated, successful scheme to defraud the Government.

Additionally, Eghbal has previously pleaded guilty to two felony charges involving fraud in San Bernardino Superior Court, including making false statements to a Notary Public. Plaintiff's Exh. C, Defendants' Response to Plaintiff's First Set of Requests for Admission at C10. Finally, in ruling on Plaintiff's Application for Prejudgment Attachment of assets and garnishment of funds, the Magistrate Judge assigned to this action found that Eghbal had fraudulently transferred certain assets to a limited liability corporation he had created after learning of this action with the "actual intent to hinder, delay or defraud" the Government.

2. *Other Penalties Are Authorized*

"Civil penalty awards in which the amount of the award is less than the statutory maximum do not run afoul of the Excessive Fines Clause." *Mackby II*, 221 F.Supp. 2d at 1110 (and cases cited therein); *see also Balice v. United States Dep't of Agriculture*, 203 F.3d 684, 699 (9th Cir. 2000) (holding that a $225,500 fine did not violate the Eighth Amendment where the maximum fine was $528,000, notwithstanding the lack of monetary loss suffered by the government.); *Ghaith R. Pharaon v. Board of Governors of the Fed. Reserve Sys,*, 135 F.3d 148, 156 (D.C. Cir. 1998) (holding that a $37 million penalty did not violate the Excessive Fines Clause since "the penalty [was] proportional to [the] violation and well below the statutory maximum [of $111.5 million]"); *United States v. Emerson*, 1078 F.3d 77, 79 (1st Cir. 1997) (holding that "a fine one-half the size of that permitted by the relevant statue, assessing $5,000 for each of [defendant's] thirty-seven admitted violations rather than the statutory maximum of $10,000 per violation . . . though substantial, is constitutionally permissible.")

The Government seeks no more than is authorized by the FCA; treble damages less the amounts to be "credited" to Defendants, and a civil penalty within the range prescribed by statute.

3. *Defendants Fraudulent Scheme Caused Significant Harm*

The "extent of the harm caused" for purposes of Excessive Fines Clause analysis is measured by "the amount the government paid in response to the false claims." *Mackby II* , 221 F.Supp.2d at 1112. Moreover, the harm caused by false claims "extends beyond the money paid out of the treasury" to the intangible effects that fraud has on the "administration and integrity" of the defrauded federal program. *United States v. Mackby*, 339 F.3d 1013, 1018-1019 (9th Cir. 2003) ["*Mackby III*"]. *See also Mackby II*, 221 F.Supp.2d at 1114 ("It is also important to note that Mackby's actions have undermined the public's confidence in the government's ability to manage its programs."); *United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987, 1019 (N.D. Cal. 2001) (noting that the government's harm in an FCA case is not "easily measurable in dollars" because "fraud erodes public confidence in the government's ability to efficiently and effectively manage its programs").

Notably, Congress provided for treble damages and an automatic civil penalty for each false claim precisely because of the seriousness of FCA offenses and the costs incurred by the Government as a result of false claims. *Mackby III*, 339 F.3d at 1017-1018 (noting, in raising the statutory penalty to $10,000 per claim, "that defrauding the government is serious enough to warrant an automatic forfeiture."); *see also United States v. Halper*, 490 U.S. at 445 (noting that the government's injury includes "not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the government's efforts to root out deceptive practices directed at the public purse."); *United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d at 1019 (citation omitted) ("As *Genty* and *Bornstein* realized, the government must foot the bill for the costs, delays, and inconveniences occasioned by fraudulent claims").

Defendants' fraudulent scheme lasted approximately seven years and involved many co-conspirators.[12] During that time Defendants paid or cause to be paid the down payments for approximately 62 loans and their conduct "resulted in approximately $5,542,000 in fraudulent loans [being] funded using [HUD] insured home mortgage loans." Plaintiff's Exh. A at A8, B at B7. It is undisputed that as a result of Defendants' fraudulent scheme HUD made payments totaling $2,808,050.93 on the 27 loans at issue in this action.[13] The Government has also incurred administrative costs, investigative expenses, and litigation expenses, including the expense of obtaining prejudgment relief when Eghbal attempted to hide his assets.

### 4. *The Gravity of the Offense Relative to the Amount of the Judgment*

As noted above, Defendants' fraudulent scheme lasted approximately seven years, involved many co-conspirators, a large number of loans, and resulted in the Government insuring "approximately $5,542,000 in fraudulent loans." Defendants do not argue that their offenses were insignificant, rather they suggest that given the significant criminal penalties imposed, the damages requested by the Government are excessive. Yet, Defendants offer no authority to suggest that the Court should consider the criminal penalties imposed in assessing whether the civil penalties sought are unconstitutionally excessive.

---

[12] Defendants note in their Opposition that they were arrested with thirteen other people in connection with their fraudulent scheme. Opposition 18 n. 6.

[13] Defendants' argument that their wrongdoing was essentially harmless because the Government ultimately recovered a portion of the money it paid as a result of the 27 defaulted loans has been considered, and rejected. *See Mackby III*, 339 F.3d at 1019 ("Congress specifically rejected a 'no harm, no foul' argument."). Additionally, in their Statement of Facts, Defendants inferentially "mention" that the Government's damages request is excessive because it failed to mitigate its damages by maximizing the prices at which it resold the 27 homes it acquired after the buyers' defaulted. Because Defendants have offered neither legal authority to establish that the Government had a duty to mitigate nor produced any evidence to establish that if such a duty exists, it was breached, the Court finds that the Government did not fail to mitigate its damages.

Based on the foregoing, the Court's finds the judgment sought by the Government is not constitutionally excessive, the Government's requested damages of $5,702,664.38 and civil penalties of $148,500[14] are not grossly excessive and Defendants have failed to overcome the "strong presumption" in favor of the constitutionality of damage awards authorized by the FCA. *See United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999) (explaining that "[b]ecause Congress is a representative body, its pronouncements regarding the appropriate range of fines for a crime represent the collective opinion of the American people as to what is and is not excessive. Given that excessiveness is a highly subjective judgment, the courts should be hesitant to substitute their opinion for that of the people .... Consequently, if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional.")

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **GRANTED**. Plaintiff shall have Judgment in its favor against Defendants, jointly and severally, in the amount of $5,702,664.38 in damages, plus civil penalties of $148,500 and costs of suit. Plaintiff shall file a Proposed Judgment consistent with this Minute Order by February 16, 2007.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

---

[14] Because Plaintiff does not request a specific civil penalty, but rather offers a range of between $148,500 to $297,000, the Court exercising its discretion determines that the minimum civil penalty is fair and appropriate in light of the Defendants' guilty pleas, incarceration, restitution payment and the significant damages awarded pursuant to the FCA compared to the actual loss suffered by the Government. *See United States ex rel. Virgin Islands Housing Authority v. Coastal General Const. Services Corp*, 299 F.Supp.2d 483, (D.Virgin Islands 2004) (Court's consider "fairness" when awarding the minimum civil penalties).